IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
Roanoke Division

STEVAN J. PORTER,

        Plaintiff,

v.                             C.A.    7:13CV00305

TARGET CORPORATION,
d/b/a TARGET STORES, INC.,

        Serve:  CT Corporation        **JURY TRIAL REQUESTED**
                   4701 Cox Rd., Suite 301
                   Glen Allen, VA 23060

        Defendant.

## COMPLAINT

1. This is an action for age discrimination and retaliation under the Age Discrimination in Employment Act, 29 U.S.C. Secs. 621 *et. seq.*, and under state law for breach of contract. Plaintiff seeks back pay (including fringe and other job related benefits), front pay, compensatory, liquidated, and consequential damages, pre-judgment and post-judgment interest, attorney's fees, costs, and appropriate equitable relief.

## JURISDICTION AND VENUE

2. This Court has jurisdiction over this action pursuant to 28 U.S.C. Sec. 1331, 28 U.S.C. Sec. 1343, 29 U.S.C. Sec. 626, and its pendent jurisdiction over state claims.

3. Venue is proper in this District under 28 U.S.C. § 1391(b), as the actions and unlawful employment practices alleged herein arose in the Western District of Virginia.

1

4. All conditions precedent to jurisdiction under 29 U.S.C. Sec. 626(d) have been met. Plaintiff filed a timely charge of age discrimination and retaliation with the Equal Employment Opportunity Commission ("EEOC"), a right to sue letter has been issued, and a suit is filed within 90 days thereof.

## PARTIES

5. Plaintiff Stevan J. Porter was employed by Target Corporation, conducting business in Virginia as Target Stores, Inc., from August 24, 1995, until he was terminated, without reason, on August 22, 2012. Mr. Porter has been, and continues to be, adversely affected by the acts of defendant and/or its agents.

6. Defendant Target Corporation, conducting business in Virginia as Target Stores, Inc., ("Target") is a Minnesota corporation, headquartered in Minneapolis, Minnesota. Plaintiff was employed by Target in Virginia at the Target Store located at 4737 Valley View Blvd., NW, Roanoke, Virginia 24012. Target has had 15 or more employees for each working day in each of 20 or more calendar weeks in the current or preceding year. Target was Plaintiff's employer within the contemplation of the Age Discrimination in Employment Act.

## STATEMENT OF FACTS

7. Plaintiff Stevan J. Porter was hired as an Assets Protection Specialist for Target on August 24, 1995. At the time of his discharge on August 22, 2012, Mr. Porter had been promoted to the position of Executive Team Leader. Mr. Porter was over forty years of age at the time Target terminated his employment, and he suffered from a heart condition and bursitis.

8. Mr. Porter was a valued employee for Target for many years. He consistently received positive performance reviews from upper management. In 2006 however, Mr. Porter noticed a change in the culture at Target - upper management instructed Mr. Porter to hire

younger employees, telling Mr. Porter that younger employees were the future of Target, and the older male was not. In April, 2006, Mr. Porter was hiring for a position and had narrowed it down to two finalists - an older married male with many years of experience and a young single female in college with no experience. Mr. Porter told his District Team Leader, Dave Woolet, that he wanted to hire the older male, but he was instructed by his District Team leader to hire the younger female because younger employees were the future of Target, and the older male was not.

9. In January, 2010, Target prepared a management employee list, but Mr. Porter was not on the list. Mr. Porter had his year end review with his Store Team Leader, Benjamin Stimart, on March 22, 2010. Mr. Stimart told Mr. Porter that he should feel privileged that Target had allowed him to stay for fifteen years because Target generally does not allow employees to stay that long.

10. On March 26, 2010, Mr. Stimart called Mr. Porter to his office. Logistics Executive, Catherine Pangagopulos, a younger peer executive was there. Mr. Stimart belittled and berated Mr. Porter in front of Ms. Pangagopulos, implying that Mr. Porter was incompetent, old and ignorant.

11. Mr. Porter suffers from a heart condition, as well as bursitis. Mr. Porter's doctor advised Target that Mr. Porter could not work more than nine hours per day because of his heart condition. However, on November 20, 2010, Mr. Stimart informed Mr. Porter that he would be working twelve hour shifts. Mr. Stimart's insistence on twelve hour shifts for Mr. Porter continued until Mr. Porter's termination on August 22, 2012, despite a doctor's instruction that Mr. Porter not work more than nine hours per day, and Mr. Stimart's knowledge of this disability.

12. On January 24, 2011 Mr. Porter discovered a shortage of merchandise that was due to a shipping error, not theft, and he reported the variance to the younger executives for their knowledge and follow up, as this was an area which should be addressed by these younger executives, rather than by Mr. Porter. However, Mark Allen, the Assets Protection Business Partner, blamed the error on Mr. Porter, and did so in front of the younger executives. Mr. Allen and Mr. Stimart began sending threatening and degrading emails to Mr. Porter regarding his leadership ability and his follow up on the shipping error. The younger executives were not admonished about the problems. Despite the fact that this problem did not fall within Mr. Porter's area, he was blamed for the problem. Mr. Porter complained to Mr. Allen and Mr. Stimart, noting that the younger executives are not held to the same level of accountability, and if that was going to be the case, Mr. Porter wanted to be moved out of Assets Protection. Mr. Allen and Mr. Stimart just laughed, and continued to blame Mr. Porter for the problem.

13. On June 3, 2011, Mark Allen, Assets Protection Business Partner, and Clare Lee, Human Resources Business Partner, conducted a store visit and walked the store with Mr. Porter and Kelsey Pope, Executive Team leader - Human Resources, a white female, age 24. Normally a store visit includes all executives present, which would include Ben Stimart and Alex Desio, but Mr. Stimart and Ms. Desio did not participate in the visit.

14. On June 23, 2011, Mr. Stimart called Mr. Porter into his office and asked how the visit went with Mr. Allen and Ms. Lee. Mr. Porter commented that it was odd that no other executives walked with them, and Mr. Stimart indicated that it was intentional. Mr. Stimart then presented Mr. Porter with an email from Mark Allen with two pages of concerns from the visit. The email said that Mr. Porter had admitted not knowing how to do certain tasks and showed a

lack of urgency. There were also quotes allegedly made by Mr. Porter in the email. Mr. Porter denied making these statements to Mr. Allen, and indicated to Mr. Stimart that those things had not happened on the visit, and that Mr. Porter had never made the comments attributed to him by Mr. Allen. Mr. Stimart did not believe Mr. Porter, and stated that Mr. Porter needed to write an action plan because Mr. Allen was going to follow up in thirty days and wanted an action plan by July 3, 2011.

15. Mr. Porter asked for additional time, so that he could have at least a month to correct the alleged problems noted by Mr. Allen. Mr. Stimart refused the request for additional time, and said that Mr. Porter's reputation in the company was that he was resistant to change; Target had changed and Mr. Porter had not, and he was "old". Mr. Stimart told Mr. Porter that Mr. Porter's reputation was that he was "old school", and that Mr. Porter still wanted to do things the "old fashioned way" and was hesitant to change. Mr. Porter again indicated that he wanted to get out of Assets Protection because he did not feel that the younger executives were held as accountable as Mr. Porter was. Mr. Stimart laughed, and said that the younger executives had things to do, and that Mr. Porter needed to complete the action plan.

16. Mr. Porter had a conversation with Kelsey Pope on June 24, 2011, and she confirmed that Mr. Porter had never made the statements attributed to him by Mark Allen, and that she would let Mr. Stimart know this.

17. Mr. Porter was on a medical leave of absence from July 8, 2011 to August 8, 2011. Despite being out on medical leave, Mr. Stimart emailed him regarding the action plan. Also while out on medical leave, Mr. Porter received an email from Mr. Allen, who indicated that Mr.

Porter had failed to start an investigation on a variance of iPads, and that Mr. Porter's actions may have compromised an investigation.

18. At a meeting on August 15, 2011, Mr. Stimart called Mr. Porter into his office and said that the problems with Mr. Allen were in the past, and now Mr. Porter needed to improve based on the inventory results. Mr. Porter indicated that he did not believe that the email from Mr. Allen was in the past, and he explained to Mr. Stimart again that the things outlined by Mr. Allen in the email had not really occurred. Mr. Porter informed Mr. Stimart that he felt he was being railroaded out of the company and that he had spoken to an attorney to protect himself regarding the age discrimination he was experiencing at Target. Mr. Stimart became very angry and jumped out of his chair and said he did not know if he could discuss anything with Mr. Porter.

19. Mr. Porter continued to try and correct the information in the inflammatory email. Mark Allen conducted a store visit on July 6, 2011, and Mr. Porter attempted to discuss the email with Mr. Allen, but Mr. Allen refused to discuss the issue.

20. On October 27, 2011 Mr. Allen held a District Assets Protection Meeting attended by the Assets Protection Manager for each store in the district. Mr. Allen assigned a job to each manager except for Mr. Porter. Mr. Porter was one of the oldest Asset Protection Managers, but was not assigned a job, while all the younger Asset Protection Managers were given assignments.

21. Mr. Stimart emailed Mr. Porter on November 1, 2011 and indicated that Mr. Porter must work a twelve hour shift the day after Thanksgiving, despite Mr. Porter's doctor having

6

provided written notification to Mr. Stimart that Mr. Porter could only work nine hours per shift because of his heart condition and bursitis.

22. Younger executives at Target were consistently held to a lower standard than Mr. Porter, and were not reprimanded when their performance fell short. For instance, on November 6, 2011, Executive Team Leader of Logistics, Catherine Pangagopulos, was not reprimanded by Mr. Stimart for failing to send required store reports to the district office. Likewise, Alex Desio, a young Hardlines Executive, broke procedure on Black Friday by allowing high dollar lock up merchandise to be handed out to customers resulting in a shortage of over $3000. Ms. Desio was not reprimanded and there were no consequences for her improper behavior. Similarly, in the spring of 2012, Ashley Williams, Executive - Guest Services, a younger employee, failed to perform required tasks, as a result, the store scored below standards. No reprimand was given and there were no consequences to Ashley Williams for her performance errors.

23. On January 15, 2012, Target implemented a "Build our Bench" program - a developmental program to prepare executives for promotion to the next level. All of the younger executives were scheduled to attend these development courses. However, Mr. Porter and Mike McCormack, Executive - Softlines, another older executive, were the only ones not scheduled to attended these development courses. These classes were conducted at other stores and at the district office every other month. Mr. Porter and Mr. McCormack, the two oldest executives in the store, were not permitted to participate in the "Build our Bench" program, and therefore were not trained and groomed for promotion to the next level.

24. Mr. Stimart asked Mr. Porter to meet with him on January 22, 2012 to solicit feedback from Mr. Porter on Mr. Stimart's performance. Mr. Porter told Mr. Stimart that he and

other employees had noticed that Mr. Stimart does not treat Mr. Porter as well as the other employees, that he only invites the younger executives to eat with him, and he ignores Mr. Porter and Mr. McCormack, the older executives.  Mr. Porter informed Mr. Stimart that the younger executives are granted time off, when he is not, and that the younger executives are not held to the same performance expectations and standards as Mr. Porter and Mr. McCormack.  Mr. Stimart provided no reasons for his actions, but indicated he would try and improve.  Mr. Stimart's actions towards Mr. Porter never improved, and he continued to treat the younger employees more favorably than he treated Mr. Porter.

25.  Mr. Stimart was required by company policy to conduct monthly leadership status meetings to address Mr. Porter's success, productivity and performance and provide suggestions for improvement.  Mr. Stimart met every month with the younger executives, but only held two of these meetings with Mr. Porter from January 1, 2012 until Mr. Porter's termination on August 22, 2012.

26.  In March 2012, Mr. Porter was out on four weeks of medical leave for a severe case of bursitis to his left hip.  When Mr. Porter returned to work, his doctor instructed that it was in a limited capacity, where Mr. Porter could not walk or stand for more than 20 minutes, and could not lift heavy objects.  Mr. Stimart scheduled Mr. Porter as the only executive in the store, requiring Mr. Porter to exceed his medical limitations to cover his responsibilities.  Mr. Porter was in severe pain, and the healing process was significantly delayed.

27.  On April 23, 2012, Mr. Allen ran the bi-weekly conference call where he gave commendations to each Assets Protection leader in each store, except for Mr. Porter.  Mr. Porter had high dollar apprehensions and recoveries where the other younger Asset Protection Leaders

did not. However, Mr. Allen failed to recognize Mr. Porter, yet recognized the younger employees for their efforts.

28. Mr. Porter was required to attend a court hearing on behalf of Target and provide testimony in a shoplifting case. Target agreed to pay Mr. Porter his hourly rate for the time spent on the court appearance, and to reimburse Mr. Porter for mileage. Mr. Porter incurred wage and mileage expenses of $178.00, but Target has refused to pay Mr. Porter this money owed.

29. Target began an investigation into Mr. Porter's handling of a shoplifting incident, and placed him on suspension. Target alleged that Mr. Porter had violated company policy concerning shoplifters by pursuing the shoplifters, when Mr. Porter was simply following another employee, who was on the phone with the police, to the parking lot. The police had directed the other Target employee to follow the shoplifters to the parking lot. Mr. Porter was assisting the other employee when he followed the employee to the parking lot, but Target refused to credit Mr. Porter's version of the incident.

30. On August 22, 2012, Target terminated Mr. Porter's employment. No specific reason was given for the termination. Mr. Porter was fifty four years old at the time of his termination, and his position was filled by a younger, less experienced worker.

31. Since April, 2009 when Mr. Stimart arrived at the Target in Roanoke, Virginia, Mr. Stimart systematically removed the older executives and replaced them with younger, less qualified workers. Mr. Stimart fabricated performance issues with the older executives, executives who had never previously had employment problems, and they were terminated or forced to retire. Mr. Stimart replaced almost all of the older executives with inexperienced younger workers in their 20s.

32. Target and Mr. Stimart maintained a "performance grid", indicating which employees, almost exclusively the older employees, Mr. Stimart was planning to phase out of their positions. Once a decision to phase out an older employee was made, Mr. Stimart would generally put such an employee on an "improvement plan". This "improvement plan" was the precursor to the older employee's ultimate termination. Once an older employee was placed on an "improvement plan", it was almost impossible for the employee to avoid termination, since the "improvement plan" was simply a pretext to get rid of the older employee.

33. Acts of poor performance by older executives were met with harsh punishment, extra work and public ridicule by Mr. Stimart. However, younger employees were not reprimanded or punished for their poor performance.

34. As an executive, Mr. Porter was instructed by Target to hire younger workers right out of college rather than older applicants when filling positions. Target informed Mr. Porter that young people are the future of the company, and he was instructed to get rid of older employees. Target engaged in a sustained pattern and practice of preferring younger executives over older executives, and terminating older executives without cause, and replacing them with younger, less experienced employees. Age discrimination was Target's standard operating procedure.

35. Upon information and belief, Target has engaged in a nationwide pattern and practice of age discrimination, systematically terminating older workers, and replacing them with younger, less experienced workers. This process generally starts with a less than satisfactory annual review for an older employee who previously had never had a bad review. After a year of

10

"coaching" and "improvement plans", Target's practice is to terminate the older employee, and replace the older employee with a younger, less experienced worker.

36. Mr. Porter has been, and continues to be, adversely affected by the actions of the defendants. As a result of their actions, he has suffered loss of income, loss of employment, loss of benefits, severe emotional distress, loss of self-esteem, depression, anxiety, personal embarrassment and humiliation, physical injury and damages.

## CAUSES OF ACTION

## COUNT I

## VIOLATION OF THE AGE DISCRIMINATION IN EMPLOYMENT ACT

37. Plaintiff incorporates by reference the preceding paragraphs of this Complaint.

38. Defendant Target is a person engaged in an industry affecting commerce who has had 20 or more employees for each working day in each of 20 or more calendar weeks in the current or preceding calendar year. As such, defendant Target is an employer within the meaning of the Age Discrimination in Employment Act, 29 U.S.C. Sec. 630(b).

39. Plaintiff is a qualified individual under the applicable provision of the Age Discrimination in Employment Act, 29 U.S.C. Sec. 631(a), who was over 40 years old at the time he was discriminated against by defendants.

40. Defendant engaged in unlawful employment practices involving the Plaintiff based upon his age in violation of the Age Discrimination in Employment Act. These practices include, but are not limited to, Defendant's refusal to train, coach or promote Mr. Porter while training, coaching and promoting younger employees with less experience and lesser skills; fabricating policy violations by Mr. Porter for which he was reprimanded, while failing to

11

reprimand younger, less experienced employees who actually violated company policies; treating Mr. Porter more harshly than other younger, less experienced employees; depriving Mr. Porter of employment opportunities made available to younger, less experienced employees; scheduling Mr. Porter for unreasonable hours and tasks; and ultimately terminating Mr. Porter's employment.

41. Defendant breached its obligations to Plaintiff to not discriminate against Plaintiff because of his age by terminating Mr. Porter on the basis of his age and health. Mr. Porter was treated differently from other, similarly situated, younger employees, in that other employees were not reprimanded, were not placed on improvement programs, were not denied promotion and training opportunities, were not scheduled for hours they could not perform, and were not terminated from their positions. These actions were in violation of the Age Discrimination in Employment Act, 29 U.S.C. Sec. 623(a)(1). Younger, less experienced workers were not treated in this manner, and Plaintiff's responsibilities were given to a younger, less experienced, worker in violation of the ADEA.

42. Plaintiff was performing his job at a level that met or exceeded his employer's expectations.

43. Defendant's conduct was knowing and showed reckless disregard for the matter whether its conduct was prohibited by the Age Discrimination in Employment Act.

44. Plaintiff was damaged by this violation of the Age Discrimination in Employment Act. As a result of the acts of the defendants as set forth above, Plaintiff has suffered and will continue to suffer loss of employment, loss of income and benefits, physical illness, depression,

12

emotional pain, inconvenience, mental anguish, loss of enjoyment of life, damages to his professional career, and personal embarrassment and humiliation.

## COUNT II

## RETALIATION IN VIOLATION OF THE AGE DISCRIMINATION IN EMPLOYMENT ACT

45. Plaintiff incorporates by reference herein the preceding paragraphs of this Complaint.

46. Plaintiff complained of the age discrimination to his store manager, Mr. Stimart, as well as to his district manager, Mr. Allen, and other superiors. Mr. Porter informed Mr. Stimart that he was being treated differently than younger workers, that he felt he was being forced out to make room for younger workers, that younger workers were held to a less rigorous standard, that Mr. Porter was being singled out for harsher treatment, and that he had discussed these concerns with an attorney.

47. After complaining of the discriminatory treatment, Mr. Porter was retaliated against for his complaints about the discrimination. Mr. Porter was denied training and promotional opportunities. He was also reprimanded and placed on an improvement plan. Other employees were not subjected to this treatment, and the discriminatory treatment intensified once Mr. Porter complained of the discrimination and informed Target that he had talked to an attorney. The intensified discriminatory treatment, and ultimately Mr. Porter's termination, were in direct response to Mr. Porter's complaints about age discrimination, and therefore constitute retaliation and are unlawful.

48. Such action on the part of Target constitutes retaliation and is unlawful. This treatment has been solely the result of Mr. Porter asserting his rights by complaining of age discrimination and discussing the age discrimination with an attorney. But for Mr. Porter's

complaints about age discrimination, Target would not have engaged in these adverse employment actions.

49. Target's conduct was knowing and showed reckless disregard for the matter whether its conduct was prohibited by the Age Discrimination in Employment Act.

50. As a result of the acts of the defendant as set forth above, Plaintiff has suffered and will continue to suffer loss of income and benefits, loss of employment, physical illness, depression, emotional pain, inconvenience, mental anguish, loss of enjoyment of life, damages to his professional career, loss of promotional opportunities, and personal embarrassment and humiliation.

## COUNT III

### BREACH OF CONTRACT

51. Plaintiff incorporates by reference herein the preceding paragraphs of this Complaint.

52. Target required Mr. Porter to attend a court hearing and provide testimony in a shoplifting case.   Pursuant to Mr. Porter's employment agreement with Target, Target was required to reimburse Mr. Porter for his hourly rate plus mileage expenses incurred in going to court on behalf of Target.

53. Mr. Porter attended the court hearing as required by Target, incurring wage and mileage expenses of $178.00.

54. Target failed to pay Mr. Porter his time and expenses incurred in attending the court hearing.

55. Target was under an obligation to pay Mr. Porter for his time and expenses incurred in attending the court hearing. Target breached its obligations under the employment agreement when it failed to pay Mr. Porter for his time and expenses incurred in attending the court hearing.

56. Mr. Porter has been damaged as a result of Target's breach of its agreement with Mr. Porter.

57. Target is liable to Mr. Porter for its breach of contract.

58. As a result of Target's breach of contract, Mr. Porter has lost income, incurred unreimbursed mileage expenses, and has suffered consequential damages.

WHEREFORE, Plaintiff requests judgment against the defendant as follows:

A. Mr. Porter asks that this Court order the defendant to make him whole with appropriate lost earnings, future lost earnings, and compensation for loss of salary and benefits in amounts to be proved at trial;

B. For each of Counts I and II,

1. Mr. Porter asks that this Court order the defendant to pay his back pay (including fringe and other job related benefits), and front pay.

2. Mr. Porter asks that this Court order the defendant to pay liquidated damages of $ 300,000.00, for its willful violation of the Age Discrimination in Employment Act;

C. For Count III, Mr. Porter asks that this Court order the defendant to pay compensatory and consequential damages for breach of contract in an amount to be proved at trial;

D. For each count set forth herein, Mr. Porter asks that this Court order the defendant to pay his reasonable attorney's fees, expert fees, costs incurred in prosecuting this action, pre-judgment and post-judgment interest, and any other costs and fees deemed proper; and

E.  For any other relief this Court deems appropriate.

## JURY TRIAL DEMANDED

Mr. Porter requests a jury trial on issues raised in this complaint.

Respectfully submitted,

STEVAN J. PORTER

By:   /s/ John P. Fishwick, Jr.
Of Counsel

John P. Fishwick, Jr. (VSB # 23285)
jpf@vatrials.com
Monica Mroz (VSB # 65766)
Monica@vatrials.com
Carrol M. Ching (VSB # 68031)
carrol@vatrials.com
LichtensteinFishwick  PLC
P.O. Box 601
101 S. Jefferson St., Suite 400
Roanoke, Virginia 24004-0601
(540) 345-5890 (telephone)
(540) 345-5789 (facsimile)